NORTON v. ABBOTT et al.

(Supreme Court, Appellate Term. December 16, 1908.)

1. EVIDENCE (§ 442*)—WRITTEN CONTRACT—VARIANCE BY PAROL.

Where a written contract for the sale of a business was complete in itself and provided that the sellers would assign any right or title they had in any lease of the premises or extension or auction for an extension thereof, parol evidence of a collateral agreement of the sellers to obtain a renewal of the lease for three years after its expiration was inadmissible as varying the written contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1874–1899; Dec. Dig. § 442.*]

2. SALES (§ 355*)—COLLATERAL PROMISE—ENFORCEMENT.

A collateral promise by the sellers of a business to obtain a renewal of the lease of the store building for three years could not be enforced in an action for the price, where no counterclaim was set up.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 355.*]

3. CONTRACTS (§ 47*)—CONSIDERATION.

An agreement collateral to a sale of a business, by which the sellers were to obtain a renewal of the lease of the store for three years, was unenforceable without a new consideration.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 220, 221; Dec. Dig. § 47.*]

4. SALES (§ 479*)—CONDITIONAL SALES—REMEDIES OF SELLER.

Where notes were given by the buyer of a business for unpaid portions of the price, and the contract provided that, in case the buyer did not pay such unpaid installments when due, he would quit the premises and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

surrender the business to the sellers, they were not limited to such remedy in case of the buyer's default and tender of the business pursuant to the contract, but were entitled instead to sue on the notes.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1434; Dec. Dig. § 479.*]

5. SALES (§ 479*)—CONDITIONAL SALES—REMEDIES OF SELLER.

Where a contract for the sale of a business provided that the buyer should surrender the business and premises to the sellers on nonpayment of deferred installments at maturity, a letter sent by the buyer to the sellers by registered mail, informing him that the store had been rented to another from the succeeding May 1st, on which date the new tenant would take possession, and calling on the sellers to do something in the matter, and that the buyer expected to hear from them, was not a valid tender of a surrender of the business to the sellers under the contract.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 479.*]

Appeal from City Court of New York, Trial Term.

Action by Max Norton against Emil B. Abbott and another. From a judgment for defendant Abbott, and from an order denying plaintiff's motion for a new trial, he appeals. Reversed, and new trial granted.

Argued before GIEGERICH, HENDRICK, and FORD, JJ.

Max Norton, in pro. per.

Henry L. Slobodin, for respondent Abbott.

FORD, J. Plaintiff, appellant, is the owner and holder of four promissory notes made and delivered to him by the defendant, respondent. Suit on the notes was brought, resulting in a judgment for the defendant, and from that determination this appeal is taken.

Plaintiff sold a certain stationery business, including stock, fixtures, and good will, located at 687 Columbus avenue, to defendant for $6,-300—$3,000 cash, balance in eight notes, payable quarterly. Plaintiff had a partner at the time, who was made a party defendant in this suit; but, since no mention was made of him upon the trial, this appeal is considered as involving the rights of plaintiff and defendant only. The written agreement of sale contained the following provisions:

"It being expressly understood and agreed that, upon the said party of the second part having paid the said $6,300 in full, this instrument shall be considered as an absolute bill of sale, and said parties of the first part agree to execute any further assurance of title, if necessary. In the meantime the said parties of the first part shall remain the sole owners of said business, goods, and chattels, but shall allow the said party of the second part to conduct it as long as the said installments are promptly paid, and upon default in the payment of any of the above installments the entire balance of the said installments then remaining unpaid shall immediately become due and payable, and if not so paid then the said party of the second part shall immediately quit and surrender said business to the parties of the first part; but, in consideration of his conducting the same in the meantime, he need not account for any of the profits he may have made during his management thereof, and the profits made during his management shall belong to him. The party of the second part must also pay the rent of said premises promptly, in consideration of his earning the profits of said business, and upon his default in the payment in advance the balance of the purchase price of said business, goods, and chattels shall also immediately become due and payable, and if not so paid then the party of the second part must immediately quit the said premises in the

same manner as when he makes default in the payment of any of said installments. The parties of the first part hereby agree not to open or conduct, or to be directly or indirectly interested in, any similar business within the radius of six blocks of said premises, provided the party of the second part complies with and fulfills every term of this agreement, for the term of five years. The parties of the first part further agree that, upon compliance by the party of the second part with all the terms of this agreement, they will assign any right or title they may have in any lease of said premises, or extension or auction for an extension thereof."

Defendant paid the $3,000, went into possession of the business, and paid four of the notes as they respectively fell due. The fifth note was due May 15, 1907; but the lease of the store, which had been taken by the plaintiff, and under which defendant occupied the premises, expired on May 1, 1907. It was a sublease, and the lessor did not renew his lease, which expired at the same time; so the defendant got his father to take a lease of the entire building directly from the landlord at a rental proportionately higher for the store mentioned in the agreement. It appears that there was nothing to prevent plaintiff's taking the lease himself, except pecuniary inability. On or about May 1st defendant's business was moved into another store covered by the new lease, next door to the one he had been occupying. The note due May 15th was not paid; hence this suit for $1,700, the amount of the four notes remaining unpaid.

Defendant was permitted to testify, over objection and exception, that the plaintiff, at the time the agreement was made, promised to obtain a renewal for three years of the lease then existing of the store. I think this an error. The contract of sale was complete in itself, and could not be thus varied by oral testimony. At most, the alleged promise was collateral, and could be enforced, if enforceable at all, only through a counterclaim or an independent action for damages for its breach. No such counterclaim was set up; but, even if it were, it could not be enforced, because of lack of consideration. Since no mention is made of the extension of the lease in the agreement of sale, and it appears from the testimony that defendant had full knowledge, at the time of the making of the agreement, of the nature and term of the sublease under which he took possession of the store, it must be held that he voluntarily took the chance of his being unable to secure a renewal. It is worthy of note, too, that defendant was not dispossessed on May 1st, but could have renewed his lease from the landlord (including, of course, the other store covered by the lease to his father) and continued his business there as formerly, had not pecuniary embarrassment and considerations of economy induced him to move his business into the adjacent store.

Defendant contends that he made a valid tender of the property to the plaintiff after he learned that he could not secure a renewal of the lease pursuant to the terms of the contract of sale, and that therefore the defendant was barred from suing on the notes. He insists that, since the contract of sale provides an alternative remedy to that of suit on the notes, namely, the recovery of the property sold, he was limited to that remedy by virtue of the alleged tender. I am of opinion that such tender, even if made with all the required legal formalities, would, under the circumstances, be ineffective to deprive plain-

tiff of his right of action on the notes. The alleged tender was made in the following letter sent by registered mail to the plaintiff:

"New York, April 29, 1907.

"Mr. M. Norton, 983 Tremont Ave., Bronx, N. Y.—Dear Sir: As I have told you when you called at my place of business, the store which I am now occupying is rented from May 1st next to somebody else. The new tenant will take possession of the store on May 1st. I will have to get out on that day and leave the fixtures there. You better do something in this matter. Expecting to hear from you, I remain."

This letter is altogether insufficient as a tender, in any view that reasonably can be taken of the force and effect of the language used in the contract of sale. The motion of the plaintiff for a direction of a verdict should have been granted.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.